UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,                                Case No. 19-cr-20096

v.                                              HON. MARK A. GOLDSMITH

DEVIN JAMAL WALKER,

    Defendant.

_____/

## Government's Sentencing Memorandum

"I can ruin your life, and have you killed, make a damn choice." Defendant Devin Jamal Walker said this to a 13-year-old girl when she no longer wanted to send him sexual images of herself—one example of the threats he made to young girls when they angered him by no longer wishing to be compliant with his requests. Even after he was confronted by the FBI and warned to discontinue his actions, Walker continued to contact victims and engage in sexually explicit conversations with them. For the charge he has pleaded guilty to, Walker's guideline range would be 360 months–life were there not a 240 month statutory maximum; in light of the statutory maximum, his guideline range is 240 months. There is nothing in the record that suggests that a guideline range sentence is unwarranted in this case.

I.     STATEMENT OF FACTS

Although Walker pleaded guilty to receipt/attempted receipt of child pornography pursuant to his Rule 11 plea agreement, Walker also produced child pornography. The child pornography he produced and received involved multiple minor females, including MV-1 (who was 13 years old), MV-2 (who was 15 years old), and MV-4 (who was 14 years old). (PSR ¶ 9.)

Walker's actions spanned 2015 until his arrest in November 2018, and in all, he had 31 videos (including videos involving penetration) and 105 images of child pornography on his electronic devices. (*Id.* ¶ 9.) He communicated with his victims on the Internet, using his legal name and the alias Devion Jones, and threatened them if they resisted his demands for pornographic images. (*Id.* ¶¶ 10–19.) Even after the FBI collected electronic devices used by Walker to produce and receive child pornography and warned him to discontinue his actions, he continued to reach out to victims and engage in sexually explicit conversations with them. (*Id.* ¶ 18.)

**MV-1** (Aged 13): In June 2018, Walker communicated with MV-1 through the smartphone applications Kik (accounts "swift._.nickel" and "radiance.energy") and Google Hangouts (account "fighting dreamer devo," associated with the email address devinwalker.d12@gmail.com). (*Id.* ¶¶ 9–10.) Walker asked MV-1 to take pictures of herself and send them to him through Kik. (*Id.*) She sent him four

photographs of herself partially clothed. (*Id*.) Walker sent her two images and two videos, including images of his face and penis. (*Id*.)

On June 18, 2018, Walker demanded more images of MV-1. (*Id*. ¶ 11.) She refused; he became angry and threatened her. (*Id*.) During a Google Hangouts conversation that day, in an attempt to coerce MV-1 into sending him additional images, Walker threatened to show others the pictures MV-1 had previously sent him and told her "I can ruin your life and have you killed, make a damn choice." (*Id*.) MV-1 told her mother about what happened, and her mother reported the incident to the police. (*Id*.)

**MV-2** (Aged 15): Walker was in an online dating-type relationship with MV-2 starting in or before 2015. (*Id*. ¶¶ 9, 13.) On May 5, 2017, Walker took a screenshot of MV-2 containing two different images—one depicting her exposing her breasts and face, and the other depicting her nude buttocks. (*Id*. ¶ 13.) Walker tagged the pictures with MV-2's name and the message "[MV-2] We WANNA Be PETTY Right?" (*Id*.) Walker was prepared to post the screenshot to Facebook. (*Id*.)

At his request, MV-2 sent Walker numerous additional images and videos, more than ten of which constitute child pornography—for example, one video created on January 10, 2016 depicts MV-2 displaying her buttocks and slapping them, bending over and spreading them to display her genitals, turning around and raising a leg to display her genitals and touch her vagina with her hand, and then

turning back around to show her buttocks again. (*Id*.; Dkt. 22, Rule 11 at PageID 55.) MV-2 has not been located.

**MV-4** (Aged 14): Walker also enticed MV-4 to send him sexual images. (*Id*. ¶¶ 9, 14.) For example, he directed her to get on all fours and to send him an image displaying her vagina in that pose; she complied. (*Id*. ¶ 14.) MV-4 has not been identified.

## II. ADVISORY SENTENCING GUIDELINES

The Probation department calculated Walker's guideline range to be **240 months**, with a total offense level of 42 and a criminal history category of I. Neither party objects to this calculation.

## III. SENTENCING FACTORS, 18 U.S.C. § 3553

Congress has provided, through 18 U.S.C. § 3553(a), the relevant objectives and factors to be considered by sentencing courts in imposing a "sentence sufficient, but not greater than necessary." Those objectives are: (1) the nature and circumstances of the offense, and the history and characteristics of the defendant; (2) the need for a sentence to reflect the basic aims of sentencing (including retribution, deterrence, incapacitation, and rehabilitation); (3) the kinds of sentences legally available; (4) the Sentencing Guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted sentencing disparities among

defendants with similar records who have been found guilty of similar conduct; and (7) the need for restitution.

The most relevant factors are evaluated below, beginning with number 4, the sentencing guidelines.

**A.     The Advisory Guideline Range**

The Supreme Court has recognized that the goals of the United States Sentencing Commission in formulating the Sentencing Guidelines are to carry out the objectives of 18 U.S.C. § 3553(a).  *United States v. Rita*, 551 U.S. 338 (2007). Despite their being advisory, rather than mandatory, the Guidelines remain an important factor in fashioning a just sentence.  As the Supreme Court stated in *Rita*, "it is fair to assume that the Guidelines, insofar as practicable, reflect a rough approximation of sentences that might achieve section 3553(a)'s objectives." *Id.* at 345.

In analyzing the holding in *Rita*, the Sixth Circuit has recognized that the guidelines represent the Sentencing Commission's attempt to reconcile the factors under § 3553(a), that these factors seek to balance Congress' competing interests in consistency, and that a confluence between the national views of the Sentencing Commission and the independent views of a sentencing judge results in a "double determination" which significantly increases the likelihood that a sentence is reasonable.  *United States v. Vonner*, 516 F.3d 382, 389 (6th Cir. 2008).

In *Gall*, the United States Supreme Court provided a template for sentencing proceedings in the district court. *United States v. Gall*, 552 U.S. 38, 49–50 (2007). The Court held that a district court should begin sentencing proceedings by correctly calculating the applicable guidelines. *Id*. at 49.

**B. The 3553(a) Factors as Applied in This Case**

The parties agree that the correct sentencing guideline range is **240 months**, as a result of the applicable statutory maximum (it would otherwise be 360 months– life).

**1. Nature and Circumstances of the Offense – 18 U.S.C. § 3553(a)(1)**

The nature and circumstances of the offense show that a guideline range sentence is appropriate. Walker preyed on children, producing dozens of child pornography videos and/or images of victims spanning ages 13–16. If a victim no longer wanted to comply with his requests, he threatened her: "I can ruin your life, and have you killed, make a damn choice." And even when confronted by the FBI and warned to stop, he persisted in preying on young girls.

**2. History and Characteristics of the Defendant – 18 U.S.C. § 3553(a)(1)**

Nothing about Walker's history and characteristics suggests that a guideline sentence is unwarranted.

Walker has a close relationship with his mother and stepfather, and his family remains supportive of him even after finding out about his sexual predation on

children. (PSR ¶ 47.) Walker is also in good health, with no known history of substance abuse. (*Id.* ¶¶ 51–52, 54.) According to Walker, he was bullied in his youth and sexually abused by a female family friend—once at age 12, and once at age 15. (*Id.* ¶¶ 48–49.) The government has no reason to doubt that this is true. Yet, it does not mitigate what Walker did to his victims. There are no studies suggesting that someone who was abused is more likely to turn around and abuse others. If that were the case, then most offenders would be female, since most victims of abuse are female. Nor is there any reasonable argument that "relat[ing] better to young people," as Walker's mother claims he does (*id.* ¶ 86), somehow excuses sexual predation on children.

### 3. The Sentence Imposed Must Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment – 18 U.S.C. §3553(a)(2)(A)

A guideline range sentence would promote respect for the law, provide just punishment, and reflect the seriousness of the offense. Walker preyed on girls as young as 13, and threatened them when they no longer wanted to comply with his requests for sexual photos and videos of themselves. He refused to stop even when the FBI confronted him. Even now, having pleaded guilty, Walker refuses to take responsibility for what he did—instead, blaming his actions on others and minimizing the harm he caused as not having been physical. (Dkt. 23, Walker Letter at Page ID 72–73.)

### 4. The Sentence Imposed Must Afford Adequate Deterrence to Criminal Conduct and Protect the Public from Further Crimes of the Defendant – 18 U.S.C. §3553(a)(2)(B) and (C)

Unfortunately, offenses like Walker's—exploiting children using the internet—are increasingly common and increasingly easy to commit. The internet provides predators like Walker access to children and the ability to exercise control over them via threats and blackmail without having to so much as step outside—as Walker himself said, "with a phone/computer, I felt like I had power." (*Id*. at PageID 72.) Thus, deterrence in these types of cases is of incredible importance. Potential offenders who think about doing what Walker did should know that, if they are caught, they will likely spend a significant part of their lives in prison.

Most importantly, a meaningful sentence is necessary to protect the public. Walker was confronted by the FBI and warned to stop preying on children; he was undeterred. To add to the concern about Walker's dangerousness, Walker fails to recognize the harm he does to his victims, claiming that he is "not like a thug that roams the streets, carries firearms, etc" and that he "never resorted to . . . sexually harming someone." (*Id*.) To the contrary, the type of predation he engaged in does constitute sexual harm, with severe consequences for the victim—as these sorts of child exploitation crimes continue to rise in frequency and gravity, so too do the

suicide rates for children in these age groups.[1] A July 27, 2016 assessment by the FBI concluded that "it is very likely child sextortion victims are attempting suicide or engaging in other self-harming behavior due to their sextortion victimization," with "very likely" meaning 80-95 percent. *Id.* According to the assessment, "the prevailing hypothesis continues to be sextortion is a major, if not the underlying, factor for child victims taking their lives in these scenarios." *Id.*

There is also a possibility that Walker may have contemplated (or committed) physical sexual abuse of children—given his report that he was employed supervising kids at a community church (PSR ¶ 11), he may be the type of predator who looks for opportunities to be around children and in positions of power relative to them in order to abuse them.

**5. The Need to Avoid Unwarranted Sentence Disparities Among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct – 18 U.S.C. §3553(A)(6)**

Sentencing Walker, a man who preyed on young girls and threatened them if they failed to comply with his requests, and who remained undeterred in his predation even after being confronted by the FBI, to a guideline sentence will not create any unwarranted sentencing disparities.

---

[1] *Children Committing Suicide or Engaging in Other Self-Harm due to Sextortion Victimization*, FBI Criminal Investigative Division, (July 27, 2016).

## IV. CONCLUSION

There is nothing about the nature and circumstances of the offense that take this case out of the heartland of receipt of child pornography cases.

                                              Respectfully submitted,

                                              MATTHEW SCHNEIDER
                                              UNITED STATES ATTORNEY

                                              *s/Alyse Wu*
                                              Alyse Wu
                                              Assistant United States Attorney
                                              211 W. Fort Street, Suite 2001
                                              Detroit, MI  48226
                                              Phone:  (313) 226-9589
                                              E-Mail: alyse.wu@usdoj.gov

Dated:  August 29, 2019

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 29, 2019, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

> Rhonda Brazile
> *Attorney for Defendant*

>> *s/Alyse Wu*
>> Alyse Wu
>> Assistant United States Attorney
>> 211 W. Fort Street, Suite 2001
>> Detroit, MI  48226
>> Phone:  (313) 226-9589
>> E-Mail: alyse.wu@usdoj.gov